PEOPLE *v.* LEE.

1. SEARCHES AND SEIZURES—OPERATION OF UNSAFE VEHICLES—PROBABLE CAUSE TO ENTER CAR.

A State statute aimed at the control of the operation of unsafe vehicles may not be utilized as a device to supply probable cause, where none exists, to enter a motor vehicle and search the same, such search constituting an unreasonable search (Const 1908, art 2, § 10; PA 1949, No 300, § 715).

2. SAME—CONSTITUTIONAL LAW—UNAUTHORIZED ENTRIES.

The constitutional safeguard against unreasonable searches and seizures, to be operative at all, must prohibit unauthorized entries into those places or things secured against the unreasonable search or seizure (Const 1908, art 2, § 10).

3. SAME—UNAUTHORIZED ENTRY INTO CAR—NARCOTICS.

Narcotics seized in automobile into which police officers made an unauthorized entry, were inadmissible either upon preliminary examination or trial, and where there was no other evidence upon which an arrest for the illegal possession of narcotics, binding over for trial, or conviction, could be based, the conviction is set aside (Const 1908, art 2, § 10).

Appeal from Recorder's Court of Detroit; Koscinski (Arthur J.), J.    Submitted October 9, 1963. (Calendar No. 14, Docket No. 50,194.)    Decided December 2, 1963.

Willie James Lee was convicted of violation of the narcotics law in the possession of marihuana.   Reversed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Samuel H. Olsen,*

REFERENCES FOR POINTS IN HEADNOTES
[1-3] 47 Am Jur, Searches and Seizures § 18.

Prosecuting Attorney, *Samuel J. Torina,* Assistant Prosecuting Attorney, for the people.

*Marvin Blake,* for defendant.

*Amicus Curiae:*

American Civil Liberties Union of Michigan, by *Rolland R. O'Hare, Erwin B. Ellmann,* and *Melba A. Kopel,* of counsel.

O'Hara, J. Defendant was convicted of possession of narcotics.* The circumstances of his arrest are best related by direct quotations from the testimony of the arresting officers:

*Direct Examination—Sergeant Charles Wolfenden:*
"*Q.* Now, at the time you made this arrest what was your reason for the arrest?
"*A.* I observed the defendant make a righthand turn off the expressway at Harper and Van Dyke. His license plate, which was attached to the bumper, was bent down in underneath the bumper, and I couldn't read it or actually tell that he had a license plate there.
"*Q.* In other words, the vehicle you observed had a license plate which was improperly displayed and defaced in a manner that would not identify it?
"*A.* That's right, sir.
"*Q.* And for that reason you stopped him?
"*A.* That's right, sir.
"*Q.* Did you yourself engage the driver in a conversation?
"*A.* I did.
"*Q.* Did you ask for his [driver's] license?
"*A.* I did.
"*Q.* And did he display his [driver's] license?
"*A.* He did.

* See CLS 1956, § 335.153 (Stat Ann 1957 Rev § 18.1123).—Reporter.

"*Q.* And, following that, did you ask him or did you direct him to move so you could make a mechanical check of the mechanical safety of the vehicle?

"*A.* I talked with the defendant, and he got out of the car and came back between the cars, where I talked to him, and I went at that time to make a mechanical check.

"*Q.* And what was your purpose? That is, what part of the vehicle were you checking?

"*A.* The brakes, sir.

"*Q.* And in order to check the brakes did you have to place yourself in the driver's seat?

"*A.* I did.

"*Q.* Now, in so doing, describe just what you did and what happened.

"*A.* As I went to get in the car, why, there was a little cushion in the driver's seat there, and I lifted up the cushion to place it over on the other side, out of the way, and that's when I observed 5 cigarettes there that I observed to be marihuana cigarettes from my experience."

*Cross-examination—Sergeant Charles Wolfenden:*

"*A.* We were stopped on the service drive just— the service drive of the expressway—just west of Van Dyke. * * *

"*Q.* Now, what were your duties at that time?

"*A.* My duties—my specific duties are gambling and vice.

"*Q.* Gambling and vice. You weren't actually assigned to anything pertaining to traffic?

"*A.* Well, that takes in my duty also, sir. * * *

"*Q.* Generally, as a matter of fact, you don't make any stops except for moving violations, is that correct?

"*A.* That's right, sir."

*Cross-examination—Officer James Sinnamon:*

"*Q.* And were you, yourself, able to read the license plate?

"*A.* No, I wasn't.

"*Q.* Did you look at it?

"*A.* Yes.

"*Q.* Now, this would seem to you an insignificant offense, wouldn't it?

"*A.* Well, it could be, yes.   *   *   *

"*Q.* Now, after the vehicle passed by the side and then in front of your vehicle you proceeded to follow that car?

"*A.* That is right.

"*Q.* Is that true?

"*A.* Yes.

"*Q.* You saw no moving violation, did you?

"*A.* No.   *   *   *

"*Q. And was anything further done in relation to the license plate?*

"*A. No, there wasn't.*   *   *   *

"*Q. No ticket was given to the defendant for any violation, State or local, is that correct?*

"*A.* No."

*Cross-examination—Officer Clements Krause:*

"*Q.* Now, officer, on that particular day—by the way, what was that date, again?

"*A.* February 12th.

"*Q.* You were assigned to clean-up?

"*A.* That's right.

"*Q.* And what are your duties in relation to the clean-up assignment?

"*A.* Well, you work in the suppression of liquor, gambling and vice.

"*Q.* You're not assigned specifically, then, to traffic violations, are you?

"*A.* Not necessarily, no.

"*Q.* And I take it, then, that you don't concern yourself with any traffic violations unless they are of more or less major consequence?

"*A.* Well, we do stop cars for traffic violations, yes, sir. We—

"*Q.* Moving violations?

"*A.* Moving violations."

The foregoing testimony graphically recites the real reason defendant was stopped by the vice squad.

Care must be taken in specifying what we decide in this case. As courts of last resort on occasions must do, we so specify by particularizing what we do not decide. We do not here construe PA 1949, No 300, chapter 6, § 715 (CLS 1956, § 257.715 [Stat Ann 1960 Rev § 9.2415]), authorizing uniformed police officers on reasonable grounds to stop any motor vehicle and inspect it for defects in equipment, including brakes, for the reason that it clearly is not involved. There is no suggestion in the testimony that the officers had reasonable grounds to make an inspection of the brakes on defendant's car. Nowhere do we find any advertence to the fact that they, in fact, stopped the car in question with a view toward the enforcement of the above statute. Contrariwise, all of the testimony indicates that officers decided to make a mechanical check of the brakes, and for that purpose enter the car after it had been stopped because of the condition of the license plate. The officers were entitled to stop the vehicle for this reason, and had they chosen, to ticket for that violation. This right, however, did not extend to fulfilling the requirement of the quoted statute that there be "reasonable grounds shown" to stop a motor vehicle "to inspect the same."

By reason of this holding, we specifically do not decide whether, had the entry into the motor vehicle been made legally, the narcotics were legally seized.

It is distasteful, indeed, to have to disregard the fact that defendant here possessed narcotics. Their ultimate disposition may have been sale to innocent thrill-seeking young people. But distasteful or no, we cannot permit a State statute aimed at control of the operation of unsafe vehicles to be utilized, as appears conclusively from the total record, as a de-

vice to supply probable cause, where none exists, to enter a motor vehicle.

Michigan's Constitution (1908), art 2, § 10 provides:

"The person, houses, papers and possessions of every person shall be secure from unreasonable searches and seizures. No warrant to search any place or to seize any person or things shall issue without describing them, nor without probable cause, supported by oath or affirmation."

The constitutional safeguard against unreasonable searches and seizures, to be operative at all, manifestly must prohibit unauthorized *entries* into those places or things secured against the unreasonable search or seizure. *People* v. *Zeigler,* 358 Mich 355, extended the prohibition against unauthorized search to an automobile. Implicitly, therefore, it extended the prohibition against entry thereunto as well. The entry here was constitutionally prohibited. It is not necessary to decide, nor do we decide in this case, whether what the officers did upon entering the automobile constituted a "search" in the constitutional sense. The entry being in contravention of the constitutional right of defendant, obviously the narcotics were illegally seized. They were inadmissible either upon examination or trial. No other evidence upon which an arrest, let alone a binding over, or conviction, could be based was offered.

The evidence should have been suppressed. The conviction is set aside.

CARR, C. J., and DETHMERS, KELLY, BLACK, KAVANAGH, SOURIS, and SMITH, JJ., concurred.