PEOPLE *v.* BLESSING.

DECISION OF THE COURT.

1. WEAPONS—CONCEALED WEAPONS—SEARCH WITHOUT WARRANT.
   Conviction in prosecution for carrying a concealed weapon,
   wherein gun was admitted in evidence, which had been taken
   from defendant's person while he was present in a jewelry
   store in a search of him without a warrant, is affirmed on
   basis that search and seizure was reasonable (CL 1948, § 750-
   .227).

SEPARATE OPINION.

KELLY and O'HARA, JJ.

2. SEARCHES AND SEIZURES—PROBABLE CAUSE—JEWELRY STORE—
   CONCEALED WEAPONS.
   *City police officers who responded to a radio call, entered jewelry*
   *store, found defendant and another conversing with clerk,*
   *talked to the manager and the clerk, questioned defendant and*

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 56 Am Jur, Weapons § 10; 47 Am Jur, Searches and Seizures
§§ 19, 54.
Offense of carrying concealed weapon as affected by manner of
carrying or place of concealment. 43 ALR2d 492.
[2] 47 Am Jur, Searches and Seizures §§ 19, 52, 53.
[3, 4] 47 Am Jur, Searches and Seizures §§ 52, 53.
[5, 8] 20 Am Jur, Evidence §§ 394, 395; 47 Am Jur, Searches and
Seizures §§ 6, 7.
[6] 20 Am Jur, Evidence §§ 393–395, 401.
[7] 20 Am Jur, Evidence § 396.
[9] 20 Am Jur, Evidence §§ 393, 394; 47 Am Jur, Searches and
Seizures §§ 6–8; 16 Am Jur 2d, Constitutional Law §§ 137, 138.
[10] 47 Am Jur, Searches and Seizures §§ 8–10.
[11] 16 Am Jur 2d, Constitutional Law §§ 58, 59, 81; 20 Am Jur 2d,
Courts § 226.
[12, 13] 20 Am Jur, Evidence § 396.
[14, 15] 47 Am Jur, Searches and Seizures §§ 52, 53.
[16] 47 Am Jur, Searches and Seizures §§ 19, 52, 53.
[17, 18, 20, 21] 47 Am Jur, Searches and Seizures §§ 6–10.
[19] 21 Am Jur 2d, Criminal Law §§ 392–394,

another as to their business in the store, were told they wished
to purchase jewelry, had just arrived in town and had no local
address, held, justified in conducting a search of the person of
defendant without a warrant, which search uncovered a con-
cealed weapon on each of the 2 men, such search being a rea-
sonable one under the circumstances (Const 1908, art 2, § 10;
Const 1963, art 1, § 11).

3. SAME—WITHOUT WARRANT—PROBABLE CAUSE.

To show probable cause to justify a search without a warrant
it is enough if the apparent facts which have come to the
officer's attention are sufficient, in the circumstances, to lead
a reasonably discreet and prudent man to believe that an offense
has been or is being committed (Const 1908, art 2, § 10; Const
1963, art 1, § 11).

4. SAME—WITHOUT WARRANT—PROBABLE CAUSE.

Probable cause to justify a search without a warrant does not
necessitate that the arresting officer should have before him
legal evidence of the suspected act, but only facts leading a
reasonably discreet and prudent man to believe that an offense
has been or is being committed (Const 1908, art 2, § 10; Const
1963, art 1, § 11).

5. SAME—CONSTITUTIONAL LAW—OUTSIDE OF CURTILAGE.

Provision of State Constitution that narcotics and various burglar
tools, seized by peace officers with or without a warrant out-
side the curtilage of any dwelling house in this State, might
be admitted in evidence is not contrary to the due process
clause of the Constitution of the United States as construed
by the Supreme Court of the United States (US Const, Ams 4,
14; Mich Const 1908, art 2, § 10, as amended in 1952; Mich
Const 1963, art 1, § 11).

6. SAME—ILLEGAL POSSESSION—WEAPONS—SEIZURE OUTSIDE CUR-
TILAGE.

Right to question illegality of search by peace officers outside the
curtilage of one's dwelling house wherein drugs, firearms, or
dangerous weapons are seized may not be raised as a defense in
prosecution for illegal possession of contraband articles (US
Const, Ams 4, 14; Mich Const 1908, art 2, § 10, as last amended
in 1952; Mich Const 1963, art 1, § 11; CL 1948, § 750.227).

SEPARATE OPINION.

DETHMERS, SMITH, and ADAMS, JJ.

7. SEARCHES AND SEIZURES—REASONABLENESS OF SEARCH—PRELIMI-
NARY EXAMINATION—MOTION TO SUPPRESS.

Motion to suppress evidence of concealed loaded guns found on
defendant and his companion through a search by police officers
who had responded to jewelry store manager's call for help
held, correctly denied, where the search appears to have been
a reasonable one from evidence adduced at preliminary exami-
nation (US Const, Ams 4, 14; Mich Const 1908, art 2, § 10,
as last amended in 1952; Mich Const 1963, art 1, § 11).

SEPARATE OPINION.

O'HARA, J.

See headnote 5.

8. COURTS—CONSTITUTIONAL LAW—SEARCHES AND SEIZURES—CURTI-
LAGE.

Precedent of Supreme Court in People v. Lee, 371 Mich 563,
which reversed conviction based upon illegally seized evidence,
was error, since the Court failed to consider the effect of
provision in the search and seizure section of the State Con-
stitution relative to property seized outside the curtilage of a
dwelling house (Const 1908, art 2, § 10, as last amended in
1952; Const 1963, art 1, § 11).

SEPARATE OPINION.

BLACK, J.

See headnote 5.

9. SEARCHES AND SEIZURES—CONSTITUTIONAL LAW—CURTILAGE—PRE-
SUMPTIONS.

Provision of State Constitution that narcotics and various bur-
glar tools seized by peace officers without a warrant outside
the curtilage of any dwelling house in this State, might be
admitted in evidence is not contrary to the due process clause
of the Constitution of the United States as construed by
the Supreme Court of the United States, where that court
has had two opportunities to examine such provision as being
contrary to its holding in an earlier case and has not done
so, in view of presumption of validity accorded provisions of
a Constitution (US Const, Ams 4, 14; Mich Const 1908, art 2,
§ 10, as last amended in 1952; Mich Const 1963, art 1, § 11).

10. Same—Constitutional Law.

Provision of State Constitution relative to searches and seizures should be upheld at this time in the interest of (a) bringing it to a test in the Supreme Court of the United States and (b) of settling for the time being the troublesome due process question arising from cases heretofore decided by that court (Mich Const 1908, art 2, § 10, as amended in 1952; Const 1963, art 1, § 11).

11. Constitutional Law—Construction of United States Constitution.

A State Supreme Court should not extend its interpretation of the United States Constitution beyond the boundaries that have been delineated by the Supreme Court of the United States.

Dissenting Opinion.

T. M. Kavanagh, C. J., and Souris, J.

12. Criminal Law—Motion to Suppress Evidence.

A motion to suppress evidence in a prosecution for crime must be determined upon the facts produced at the time of the hearing thereon, and cannot be amplified by testimony taken later at trial.

13. Same—Reasonableness of Search—Motion to Suppress Evidence.

Motion to suppress evidence in prosecution of defendant for carrying a concealed weapon should have been granted where the search was unreasonable, based upon testimony at preliminary examination which showed officers arrived at jewelry store in response to radio dispatch, found two men, one of whom was defendant, talking to a saleslady who said there was nothing wrong, and the officers talked to the manager and to the men, who gave plausible explanations of their presence, before being searched by the officers (CL 1948, § 750.227).

14. Same—Probable Cause.

Peace officers could not lawfully arrest and search defendant without a warrant unless they had probable cause to believe that defendant had committed a felony.

15. Searches and Seizures — Search Without Warrant — Suspicion.

A peace officer may not make a search without a warrant on the basis of mere suspicion without probable cause to believe that the law is being violated.

16. SAME—WITHOUT WARRANT—JUSTIFICATION.

*Justification of a search and seizure, without a warrant, must arise from some fact or circumstance or upon such information as would create in the officer's mind a reasonable and honest belief that. the law was being violated (Const 1908, art 2, § 10; Const 1963, art 1, § 11).*

17. CONSTITUTIONAL LAW—SEARCHES AND SEIZURES—DUE PROCESS.

*Provision of State Constitution permitting admission in evidence of narcotics and various burglar tools, seized by peace officers without a warrant outside the curtilage of any dwelling house in this State,* held, *invalid, as contrary to search and seizure provision and the due process clause of the Constitution of the United States as construed by the Supreme Court of the United States (US Const, Ams 4, 14; Mich Const 1908, art 2, § 10; Mich Const 1963, art 1, § 11).*

18. SAME—SEARCHES AND SEIZURES.

*The Fourth Amendment of the Constitution of the United States, as it has been construed by the Supreme Court of the United States, recognizes no exceptions to the rule that evidence seized in an unreasonable search may not be received in a criminal proceeding, State or Federal, and a State has no unilateral power to modify that amendment (US Const, Ams 4, 14).*

19. CRIMINAL LAW—STATE—UNITED STATES.

*Federal and State cooperation in the solution of crime under constitutional standards will be promoted by recognition of their mutual obligation to respect the same fundamental criteria in their approaches.*

20. SAME—ARRESTS—SEARCHES AND SEIZURES—INVESTIGATION—LAW ENFORCEMENT—EVIDENCE.

*States are not precluded by the Supreme Court of the United States from developing workable rules governing arrests, searches and seizures to meet the practical demands of effective criminal investigation and law enforcement, provided that those rules do not violate the constitutional proscription of unreasonable searches and seizures and the concomitant command that evidence so seized in violation of such proscription is inadmissible against one who has standing to complain (US Const, Ams 4, 14).*

21. CONSTITUTIONAL LAW—SEARCHES AND SEIZURES—PRECEDENTS.

*The precedent of* People *v.* Lee, *371 Mich 563, effectively voided the provision of the Constitution which purported to permit*

into evidence certain illegally seized evidence, when it reversed a conviction for possession of narcotics because there had been admitted into evidence against defendant, narcotics which the Court found had been illegally seized from defendant's automobile, without discussing the effect of the proviso and recent decisions of the Supreme Court of the United States, even though raised at trial and in briefs.

Appeal from Recorder's Court for the City of Detroit; Groat (Gerald W.) J. Submitted November 3, 1965. (Calendar No. 18, Docket No. 51,218.) Decided June 8, 1966.

Richard Charles Blessing was convicted of carrying a concealed weapon. Affirmed.

*Frank J. Kelley*, Attorney General, *Robert A. Derengoski*, Solicitor General, *Samuel H. Olsen*, Prosecuting Attorney, *Samuel J. Torina*, Chief Appellate Lawyer, and *James E. Lacey*, Assistant Prosecuting Attorney, for the people.

*George LaPlata*, for defendant.

KELLY, J. Defendant appeals from a jury conviction of carrying a concealed weapon[1] and asserts as error the failure of the trial court to grant his motion to suppress evidence.

Two points are argued: First, that probable cause was not established to support the search without a warrant, of defendant's person; and, second, that article 1, § 11, of the 1963 Michigan Constitution (article 2, § 10, 1908 Constitution), violated the Fourteenth Amendment to the United States Constitution as interpreted by the case of *Mapp* v. *Ohio*, 367 US 643 (81 S Ct 1684, 6 L ed 2d 1081, 84 ALR2d 933.)

---

[1] CL 1948, § 750,227 (Stat Ann 1962 Rev § 28.424).—REPORTER.

The only witness at the examination (December 6, 1963), which resulted in defendant Blessing being bound over for trial, was Detroit police officer Charles McNamara.

He testified that on November 23, 1963, about 1 p.m., he, while in uniform in a scout car, heard the radio call which resulted in his car and three other scout cars proceeding to the retail jewelry store located at 19376 Livernois avenue, Detroit, Michigan; that the manager, a saleslady, and two white males were in the store; that after talking to the manager and the saleslady he talked "to the two men out there and questioned them as to their business in the store there." McNamara further testified:

"I asked Richard Charles Blessing to identify himself to me, and as to what his purpose was as to being in that location there, and he stated to me that he was there in regards to making a purchase of some jewelry, and that he had made an appointment with the manager, Herbert Kay, to come back at 4:30 that day, to make a purchase. * * * I asked Mr. Martin for his identification, and he did not produce any identification, and he told me he was Father John Moore and that he was,—or rather, I asked him where they were located, and Richard Blessing stated at that time that they had just gotten into town, and they had no address here at this time. * * * I went to talk to Blessing, and I wanted to take him in the back room and try and figure out their story, and as we walked back there I informed him that I was going to search him, and upon searching him I found a pair of handcuffs, as well as a loaded .38 revolver on his hip."

The court refused defendant's objection to the introduction in evidence of the revolver the police officer testified he found concealed on defendant Blessing's person, stating that he disagreed with

counsel that *Mapp* v. *Ohio, supra,* invalidated the Michigan Constitution *in re* search and seizure.

Motion to suppress evidence and quash information was duly made by counsel for appellant, heard before the presiding judge for the recorder's court for the city of Detroit, and denied.

At the March 19, 1964, trial, in addition to officer McNamara, the people introduced the testimony of three police officers and Mr. Kay, the manager of the jewelry store. Mr. Kay testified why the behavior of appellant Blessing and his companion Martin, on the sidewalk before entering the jewelry store caused him to call for help by pressing the alarm button and how their actions after entering the store confirmed his suspicions. The police officers' testimony established that after Blessing was searched, a search of Martin was also made which disclosed that he had on his person a loaded .38 caliber revolver.

At the conclusion of the people's case, counsel for appellant again moved to suppress the evidence. The trial court indicated that the officers had a right to make the search, and denied said motion.

Because of extensive questioning by this Court during oral argument, the assistant prosecuting attorney of Wayne county asked for, and was granted, the right to file a supplemental brief. We quote from that brief as follows:

"The appellee herein is not, nor has he been unfamiliar with the Michigan practice of requiring pretrial motions to test the legality of a search and seizure. *People* v. *Marxhausen,* 204 Mich 559 (3 ALR 1505); *People* v. *Miller,* 217 Mich 635; *People* v. *Bass,* 235 Mich 588; *People* v. *Heibel,* 305 Mich 710; *People* v. *Taylor,* 341 Mich 570; *People* v. *Robinson,* 344 Mich 353; *People* v. *Ferguson,* 376 Mich 90,

"Furthermore, the appellee admits knowledge of the companion rule that the facts upon which a pretrial motion is to be determined are the preliminary examination testimony and that these facts may not be amplified by the trial testimony for purpose of the appeal. *People* v. *Taylor, supra; People* v. *Zeigler,* 358 Mich 355; *People* v. *Williams,* 368 Mich 494. * * *

"The position of the appellee is that the trial court could have refused to hear argument by defense counsel on the issue of search and seizure for the reason that the matter had already been decided by pretrial motion and that the issue of the legality of the search and seizure was collateral to the main issue of the guilt or innocence of the defendant on trial.

"The appellee further states that it is his opinion that the trial court should not have granted a second hearing on the motion to suppress and that to deny such a motion would be in line with better Michigan practice in that a defendant is not legally entitled to a second hearing on the legality or illegality of a search and seizure. *People* v. *Kerwin,* 234 Mich 686; *People* v. *Kramer,* 260 Mich 94.

"However, the trial court, in its discretion, permitted the issue to be renewed by defense counsel, and at their urging, heard arguments outside the presence of the jury, and then rendered its decision denying the renewed motion to suppress. By following this course of action, the trial court gave the defendants a second chance to urge the illegality of the search and seizure. Upon a full and fair hearing, it was determined that the defense counsel's motion be denied. Does this decision of the trial court render the renewal of the issue of the legality of the search nugatory and so much idle waste of judicial time? We think not. It is the position of the appellee that the people of the State of Michigan, having twice been put to the task to defend the search and the seizure, in all fairness should also be the recipients of any benefit conferred by

reason of the second argument and not be limited or bound by the second argument only if the people should lose same. Therefore, the position of the appellee has been based primarily on the apparent fairness of this latter premise.

"In legal support of this premise we would direct the Court's attention to the following Michigan precedents."[2]

I believe it will assist the courts and the law enforcement officers if this decision is confined to answering two questions:

Question No. 1: *Was sufficient evidence introduced at the preliminary examination justifying the court's denial of defendant's motion to suppress evidence and binding defendant Blessing over for trial?*

Question No. 2: *Did the judge at the preliminary examination rightly conclude that he had the right and duty to follow and enforce the constitutional provisions in re search and seizure?*

### Question No. 1.

In determining the legality of a search and seizure, this Court should give serious thought to the particular situation and all its attendant circumstances.[3]

As Officer McNamara turned his scout car toward the jewelry store, knowing that three other scout cars had been directed by radio to converge on this store, he had reason to conclude that he was approaching a point of great danger.

It is my opinion that the police officers would have been justified under these circumstances to have

---

[2] *People* v. *Cardella*, 233 Mich 505; *People* v. *Feltner*, 234 Mich 209; *People* v. *Nutter*, 255 Mich 207; *People* v. *Lee*, 371 Mich 563.

[3] *People* v. *Licavoli*, 245 Mich 202; *People* v. *Miller*, 245 Mich 115; *People* v. *Lewis*, 269 Mich 382; *People* v. *Gonzales*, 356 Mich 247; *People* v. *Kuntze*, 371 Mich 419; *Brinegar* v. *United States*, 338 US 160 (69 S Ct 1302, 93 L ed 1879); *Ker* v. *California*, 374 US 23 (83 S Ct 1623, 10 L ed 2d 726).

immediately taken the necessary steps to assure themselves that those within the jewelry store were not carrying concealed weapons.

In addition, however, police officer McNamara, trying to learn who these people were and obtain their explanation of their actions that caused the manager to push the alarm button, received from appellant Blessing the answer that they had come from Illinois to that jewelry store to buy a diamond and "had just gotten into town, and they had no address here at this time."

I quote with approval the following from the people's brief:

"The earlier recitation in this section of the brief of the facts, possessed by the police officers at the time of arrest, certainly demonstrates the officers acted with reasonable prudence and caution and had good reason to believe that these men were committing a felony. It is respectfully submitted that if the police officers had charged into the jewelry store, the result of an official police broadcast and had seen nothing ostensibly wrong and walked right out without further investigation, they indeed would have been derelict in their duty and subject to severe censure by their superiors. The police, under the facts in the present case, acted reasonably and the trial court's determination that they did in fact so act cannot be realistically subject to doubt."

Officer McNamara did not have to have legal evidence that appellant entered the jewelry store to commit robbery and, if necessary, murder, but only sufficient facts for a reasonably discreet and prudent man to conclude such was true, as is disclosed by *Husty* v. *United States,* 282 US 694 (51 S Ct 240, 75 L ed 629, 74 ALR 1407), where the court held:

"To show probable cause it is not necessary that the arresting officer should have had before him

legal evidence of the suspected act. It is enough if the apparent facts which have come to his attention are sufficient, in the circumstances, to lead a reasonably discreet and prudent man to believe that liquor is illegally possessed in the automobile to be searched." (Syllabus 2.)

The court conducting the examination had sufficient evidence to deny the motion to suppress and to bind the defendant over for trial.

### Question No. 2.

Appellant contends that the provisions of article 2, § 10, of the 1908 Michigan Constitution which provides, "That the provisions of this section shall not be construed to bar from evidence in any court of criminal jurisdiction, or in any criminal proceeding held before any magistrate or justice of the peace, any narcotic drug or drugs, any firearm, rifle, pistol, revolver, automatic pistol, machine gun, bomb, bombshell, explosive, blackjack, slungshot, billy, metallic knuckles, gas-ejecting device, or any other dangerous weapon or thing, seized by any peace officer outside the curtilage of any dwelling house in this State," has been invalidated by the United States Supreme Court decision in *Mapp v. Ohio, supra.*

The facts in the *Mapp Case* are so different than the facts in the present appeal. Justice Clark, in the *Mapp Case,* labeled the search as "official lawlessness" and "a flagrant abuse" of basic rights, and described the forcible entry and search as follows (pp 644, 645):

"On May 23, 1957, 3 Cleveland police officers arrived at appellant's residence in that city pursuant to information that 'a person [was] hiding out in the home, who was wanted for questioning in connection with a recent bombing, and that there was a large amount of policy paraphernalia being hidden in the home.' Miss Mapp and her daughter

by a former marriage lived on the top floor of the
2-family dwelling.     *   *   *

"Running roughshod over appellant, a policeman
'grabbed' her, 'twisted [her] hand,' and she 'yelled
[and] pleaded with him' because 'it was hurting.'
Appellant, in handcuffs, was then forcibly taken up-
stairs to her bedroom where the officers searched
a dresser, a chest of drawers, a closet and some
suitcases.   They also looked into a photo album
and through personal papers belonging to the ap-
pellant.   The search spread to the rest of the second
floor including the child's bedroom, the living room,
the kitchen and a dinette.   The basement of the
building and a trunk found therein were also
searched.   The obscene materials for possession of
which she was ultimately convicted were discovered
in the course of that widespread search.

"At the trial no search warrant was produced by
the prosecution, nor was the failure to produce one
explained or accounted for."

The Cleveland police forced their way into the
Mapp home.   The Detroit police entered the jewelry
store in response to the manager's call for help.

The people in their brief urge "this Court to af-
firm the reasonable exercise of the police power of
this State, found in article 1, § 11, of the 1963 Michi-
gan Constitution and hold same not to be repug-
nant and in violation of the United States Consti-
tution by reason of the holding in *Mapp* v. *Ohio,
supra,*" and review Michigan's dealing with search
and seizure as follows:

"The decision in *Mapp* made it incumbent upon
the several States to adopt the exclusionary rule of
evidence as part and parcel of the Fourth Amend-
ment's prohibitions against unreasonable searches
and seizures.   It specifically reversed a prior de-
cision of that court in the case of *Wolf* v. *Colorado,*
338 US 25 (69 S Ct 1359, 93 L ed 1782).   However,
Michigan was not one of the target States at which

this constitutional arrow was pointed. In 1919 the highest court in Michigan, just five years after the Federal courts adopted the exclusionary rule of evidence in Federal trials, became the first State in the Union to follow the Federal courts' lead and voluntarily imposed on itself an exclusionary rule of evidence. This same exclusionary rule, as first expounded in the case of *People* v. *Marxhausen*, 204 Mich 559, is still the rule in the State of Michigan to this day. In the interim period of time from the adoption of this rule to 1936, there reigned in Detroit a seige of lawlessness and terror vented upon the public. * * * As the result of these crimes and the advent of the automobile, the people of the State of Michigan in 1936 voted and passed a constitutional amendment adding a proviso to then article 2, § 10, of the 1908 Constitution dealing with unreasonable searches and seizures:

" 'Provided however that the provisions of this section shall not be construed to bar from evidence in any court of criminal jurisdiction or in any criminal proceeding held before any magistrate or justice of the peace any firearm, rifle, pistol, revolver, automatic pistol, machine gun, bomb, bombshell, explosive, blackjack, slungshot, billy, metallic knuckles, gas-ejecting device, or any other dangerous weapon or thing seized by any peace officer outside the curtilage of any dwelling house in this State.'

"In 1952 the State legislature proposed and the people voted and ratified another amendment to the constitutional provision, dealing with the reprehensible traffic in narcotics with the words 'any narcotic drug or drugs.' Eleven years later in 1963, they again, through duly elected delegates of the State of Michigan, reaffirmed its earlier provisions by inserting into their new Constitution substantially the same public protection previously found necessary.

"The people, who are the ultimate source of sovereignty, have reasonably expressed their will on three separate occasions. The purpose of this

proviso is to protect the safety of the public, a proper aim of the police·power."

Emphasizing that *Mapp* did not usurp State rights *in re* search and seizure, the people call to this Court's attention the first case considering *Mapp* in the United States Supreme Court[4] where, in affirming convictions for possession of marijuana, the court stated:

"*Mapp,* however, established no assumption by this court of supervisory authority over State courts  *  *  *  and, consequently, it implied no total obliteration of State laws relating to arrests and searches in favor of Federal law.  *Mapp*·sounded no death knell for our federalism.  *  *  *  The States are not thereby precluded from. developing workable rules governing arrests, searches and seizures to meet 'the practical demands of effective criminal investigation and law enforcement.' "

Appellant attempts to discount the *Ker* decision by stating that the opinion was not adopted by a unanimous court and calls attention that, "In the cases of *Stoner* v. *California,* 376 US 483 (84 S Ct 889, 11 L ed 2d 856), and *Preston* v. *United States,* 376 US 364 (84 S Ct 881, 11 L ed 2d 777), both decided after *Ker,* the United States Supreme Court reversed convictions obtained after searches by State officers acting without warrants."

The *Preston* v. *United States* decision condemned a search as "being too remote in time or place to be treated as incidental to the arrest," and did not even refer to the *Ker* decision.

The *Stoner* v. *California* decision condemned a search of defendant's hotel room without a warrant because it was not "substantially contemporaneous

---

[4] *Ker* v. *California,* 374 US 23, 31, 34 (83 S Ct 1623, 10 L ed 2d 726).

and confined to the immediate vicinity of arrest."
The only reference to *Ker* is found in the footnote
on pages 486 and 487, which reads:

" 'The right without a search warrant contem-
poraneously to search persons lawfully arrested
while committing crime and to search the place
where the arrest is made in order to find and seize
things connected with the crime as its fruits or as
the means by which it was committed, as well as
weapons and other things to effect an escape from
custody, is not to be doubted. See *Carroll* v. *United
States,* 267 US 132, 158 (45 S Ct 280, 69 L ed 543,
39 ALR 790); *Weeks* v. *United States,* 232 US 383,
392 (34 S Ct 341, 58 L ed 652, LRA1915B, 834, Ann
Cas 1915C 1177). * * * But the right does not
extend to other places.' *Agnello* v. *United States,*
269 US 20, at 30 (46 S Ct 4, 70 L ed 145, 51 ALR
409). See, also, *Ker* v. *California,* 374 US 23, 42,
n 13; *Lustig* v. *United States,* 338 US 74, 79, 80 (69
S Ct 1372, 93 L ed 1819)."

Neither *Mapp* nor *Ker* held that the States must
be governed by fixed formulas following Federal
evidentiary rules. In fact, the State of Michigan,
which appellant claims is illegally ruthless in its
method to combat crimes, has protected the accused
beyond those rules provided by Federal procedures
at Federal trials. Michigan requires the holding
of a preliminary examination with rights of con-
frontation and cross-examination. The Federal
code of criminal procedure does not provide such
a safeguard. In Michigan we must not only advise
the accused of the charges made against him, but
also, the names of the witnesses the State will call
to prove those charges. Under the Federal system
the accused does not learn the identity of the wit-
nesses against him until those witnesses are called
to the stand in open court when the trial is in prog-

ress. GCR 1963, 785.5, commands the prosecuting attorney to give written notice to the defendant at the time of his arraignment on the information, of any confession or admission made by him to the police. These examples are but a few of the differences in procedure between the courts of Michigan and the Federal courts.

The same charges appellant makes in this appeal as to the effect of *Mapp* v. *Ohio* upon the validity of our Michigan Constitution was made by appellant in *In re Winkle,* 372 Mich 292, certiorari denied 379 US 645 (85 S Ct 611, 13 L ed 2d 551). The writer of this opinion answered appellant's challenge in *Winkle* by holding that the *Mapp* v. *Ohio* decision did not render the provisions found in article 2, § 10, of the 1908 Constitution invalid.

I answer the present appellant as I did the appellant in *Winkle* and refer to and incorporate as a part of this opinion what I wrote in *Winkle.* I again repeat (pp 324, 325):

"The Michigan proviso does not condone illegal search. It was an expression by the people of this State to the citizenry that if they have in their possession, outside the curtilage of their dwelling, drugs, firearms, or dangerous weapons, or things, said possessor would not have the right to question the legality of the search as a defense to illegal possession."

Affirmed.

O'HARA, J., concurred with KELLY, J.

ADAMS, J. (*concurring in affirmance*). I concur in the result reached by Justice KELLY based upon his answer to Question No. 1. The search was shown to have been a reasonable one at the pre-

liminary examination. The motion to suppress was therefore correctly denied.

Dethmers and Smith, JJ., concurred with Adams, J.

O'Hara, J. (*concurring in affirmance*). It is an unpleasant obligation of the appellate judge to have to admit error in what he has written into the case law of his State.

Mr. Justice Souris, in his discerning comment on *People* v. *Lee,* 371 Mich 563, requires me to confess error. I wrote for a unanimous Court in *Lee*, but as to its effect upon the proviso of article 2, § 10 which excepts from unreasonable searches and seizures outside the curtilage of any dwelling house, narcotics among other things, I can now speak only for myself.

I was wrong. My position was completely irreconcilable with that which I took by signing Justice Kelly's opinion in *In re Winkle,* 372 Mich 292, certiorari denied 379 US 645 (85 S Ct 611, 13 L ed 2d 551). Either I must take my stand with Justice Kelly as to the constitutionality of the section, or I must accede to Justice Souris' contention that the proviso "which purported to permit into evidence certain illegally seized evidence already has been effectively unanimously overruled by this Court."

I stand with Justice Kelly and repeat my confession of error that I should have faced the Federal Constitutional question in *Lee, supra.* I evidence my position by this separate concurrence and by signing Justice Kelly's opinion also.

Black, J. (*concurring in affirmance*). I vote to affirm.

The time has come for majority concurrence with Justice KELLY's 1964 determination (*In re Winkle,* 372 Mich 292) that section 10 of article 2 (Const 1908 as last amended in 1952) has remained valid as against *Mapp* v. *Ohio,* 367 US 643 (81 S Ct 1684, 6 L ed 2d 1081, 84 ALR2d 933). Such concurrence would of course sustain currently section 11 (of article 1, Const 1963) as against corresponding attack, the former and present sections being substantially alike.

What is advocated by this opinion of concurrence would mean simply that our "outside the curtilage" constitutional provision stands presumptively valid until that day comes, if it does, when the Supreme Court of the United States holds otherwise.

I am less ready than ever (see separate opinion, *Scholle* v. *Secretary of State,* 360 Mich 1, 110) to "attempt to outrun the Supreme Court of the United States."* That Court on successive bids of *Winkle* now has had *two* opportunities to strike down said section 10, utilizing *Mapp,* yet has not done so. That fact, considered with the presumption of validity said section 10 has always enjoyed, suggests that section 10 should be upheld now in the interest (a) of bringing it to challenging test on the Potomac and (b) settling for the time being a Fourteenth Amendment question that has nagged our trial and

---

* This expression, one I suggest Justice ADAMS in particular cannot ignore, is his own. He wrote (*In re Apportionment of State Legislature—1964,* 372 Mich 418 at 473, 474):

"Nevertheless there is great cogency and force in the interpretation of the Fourteenth Amendment which Justice SOURIS would make. It may well reflect the decision the United States Supreme Court will hand down any day now. When that day comes I will be pleased to join with him. Until it does, I do not conceive it to be the proper duty or function of this Court to attempt to outrun the Supreme Court of the United States. As was found by a majority of this Court in the first *Scholle* Case (*Scholle* v. *Secretary of State,* 360 Mich 1), we have no right to extend our interpretation of the United States Constitution beyond the boundaries that have been delineated by the United States Supreme Court."

appellate courts no end ever since *Mapp* was handed down June 19, 1961.

When *Winkle's* first appeal to the Supreme Court of the United States was made, that appeal resulted in an order of remand "for consideration in the light of *Mapp* v. *Ohio,* 367 US 643" (November 6, 1961; *Winkle* v. *Bannan,* 368 US 34 [82 S Ct 146, 7 L ed 2d 91]). Then came the second opportunity. This Court duly complied with the aforesaid order of remand (See our order of December 11, 1961, quoted 372 Mich at 306). Upon resubmission this Court again denied *Winkle* the writ sought by him (February 3, 1964; *In re Winkle,* 372 Mich 292). *Winkle* filed again for review by the United States Supreme Court. January 18, 1965 the Supreme Court entered the following order (*Winkle* v. *Bannan,* 379 US 645, 85 S Ct 611, 13 L ed 2d 551):

"Per Curiam: The motion to strike excerpts from the motion to dismiss is denied. The motion to dismiss is granted and the appeal is dismissed for want of jurisdiction. Treating the papers whereon the appeal was taken as a petition for a writ of certiorari, certiorari is denied."

April 5, 1965, *Winkle's* petition for rehearing was denied (380 US 967, 85 S Ct 1102, 14 L ed 2d 157).

When the *Winkle* opinions of 1964 were signed and released the members of this Court viewed the quoted order of remand, and our *second* refusal to grant *Winkle* the writ prayed for by him, as posing said section 10 squarely before the Supreme Court for test by *Mapp.* Such at least was the reason for my own concurrence in the result only this Court reached on that occasion.

The ensuing situation has boiled down to this, so far as the present writer is concerned: if the Supreme Court is not yet ready to strike down— upon authority of *Mapp*—a State Constitutional

provision such as Michigan adopted in 1936, 1952 and again in 1963, neither am I.

SOURIS, J. (*dissenting*).

## I.

The propriety of denial of defendant's pretrial motion to suppress evidence must be tested against the testimonial record made at the preliminary examination, and additional testimony produced later at trial may not be considered. See, on this point, Mr. Chief Justice T. M. KAVANAGH's opinion in *People* v. *Kaigler* (1962), 368 Mich 281, 297, 298, and the cases there cited and discussed.

## II.

Upon the testimony given at the examination, was the search of defendant reasonable? I answer that it was not. The testimonial record of the examination may be summarized: Officer McNamara testified that early one afternoon he heard a radio message in his scout car directing three other scout cars to go to a retail jewelry store in Detroit. The record of the examination proceedings does not reveal for what purpose the other scout cars were dispatched to the store or that Officer McNamara knew that purpose. Although they were not ordered to do so by the radio message, Officer McNamara and his partner proceeded to the store and arrived there before the other scout cars. Upon entering the store, they observed two men, one of whom was defendant, talking to a saleslady. According to Officer McNamara, the saleslady stated "that nothing was wrong in the store". The manager of the store was 10 to 15 feet away from the saleslady toward the rear of the store and had been talking on the telephone when the officers entered the store.

After the manager finished his telephone conversation, Officer McNamara and he proceeded to a back room where they conversed. The following then ensued:

"*A.* [*By Officer McNamara*]   Then I went back out in front of the store, and I started to talk to the two men out there and questioned them as to their business in the store there.

"*Q.* All right.   What did you say to the defendant, Richard Charles Blessing, and what did he say to you?

"*A.* I asked Richard Charles Blessing to identify himself to me, and as to what his purpose was as to being in that location there, and he stated to me that he was there in regards to making a purchase of some jewelry, and that he had made an appointment with the manager, Herbert Kay, to come back at 4:30 that day, to make a purchase.

"*Q.* All right.   What did you say to the defendant, Michael Donald Martin, and what did he say to you?

"*A.* I asked Mr. Martin for his identification, and he did not produce any identification, and he told me he was Father John Moore and that he was,— or rather, I asked him where they were located, and Richard Blessing stated at that time that they had just gotten into town, and they had no address here at this time.

"Then upon question Mr. Martin, he stated that he was staying at the University of Detroit for 6 weeks, visiting with the faculty.

"*Q.* Now, did the defendant, Michael Donald Martin, show you any identification?

"*A.* No sir, Martin did not show me any identification.

"*Q.* How was the defendant, Michael Donald Martin, dressed at that time?

"*A.* He was dressed as a priest.

"*Q.* All right, and what did you do then, Officer?

"*A.* I went to talk to Blessing, and I wanted to take him in the back room and try and figure out their story, and as we walked back there I informed him that I was going to search him, and upon searching him I found a pair of handcuffs, as well as a loaded .38 revolver on his hip."

Upon this testimonial record, the search of defendant was illegal. There is nothing in this record to indicate that probable cause existed to believe that defendant had committed a felony. In essence, the evidence offered at the examination was: the officers heard a radio message dispatching other scout cars to a jewelry store; they proceeded to the store, where they found two men, one of them the defendant, talking to a saleslady who said there was nothing wrong; the officers then talked to the manager (but about what is not disclosed) and to the two men, who gave plausible explanations for their presence; thereupon the officers searched defendant.

Surely these facts, and it is upon *these* facts alone that the legality of the search must be judged, do not give rise to probable cause to believe that defendant had committed a felony. Absent such probable cause belief, defendant could not lawfully be arrested and searched without a warrant. At the very most, one might say the circumstances were "suspicious", but suspicion does not authorize search without a warrant. "Neither may an officer make a search on the basis of mere suspicion without probable cause to believe that the law is being violated." *People, ex rel. Attorney General,* v. *Lansing Municipal Judge* (1950), 327 Mich 410, 425. Had the State brought out at preliminary examination, as it well could have, all of the circumstances known to Officer McNamara before he searched defendant,

the result we reached might have been different;[1] but the State neglected to do so, and those facts being beyond the evidentiary record we may properly consider for purposes of this appeal, we need make no finding thereon.

However much we may be convinced of defendant's guilt, the complete testimonial record of the trial considered, our task is limited to review of the denial of defendant's motion to suppress made during the preliminary examination. Our appellate judgment must be based exclusively, as was the examining magistrate's judgment we reviewed, on the evidence offered by the people at the examination to establish the legality of the search during which the evidence sought to be suppressed was seized. The prosecutor failed to offer at the examination evidence in support of the reasonableness of the search which the subsequent trial record reveals was, or should have been known by him to be, available. When the examining magistrate decided de-

---

[1] Thus, at trial, the manager of the jewelry store testified that the defendant and his companion:

"* * * * passed the store together looking into the store each time and looking all around and several times by themselves they passed the store, and this man sitting closest to me—

"The Court: Get his name for the record.

"Q. (By Mr. Fritz): Mr. Blessing?

"A. Mr. Blessing passed the store by himself several times and one time when I noticed him passing by himself, I went to the front of the store to see what he was doing. He stopped two doors away and was looking up and down the street for several minutes. Then, when he noticed me looking at him he started walking the other way."

He testified further that the men asked to see a 3 or 3-1/2 carat diamond, because the man in priest's garb was to officiate the next day at defendant Blessing's marriage ceremony; and that both men seemingly were ignorant as to diamond styles, settings, and price ranges. The manager asked them to leave and return later in the day. Officer McNamara, at the trial, but not at the examination proceedings, testified as to his conversation with the manager:

"He stated that he had saw them in front of the store for quite a period of time prior to their entering the store and that they had came in and they wanted to see a large ring and after some conversation they made an appointment, I believe, to come back around 4:30 and he said that after this conversation that they had stayed in the store and he had become suspicious of their habit."

fendant's motion to suppress, he did not have such evidence before him; nor do we in reviewing the judgment he made.

## III.

Mr. Justice KELLY argues again[2] that even if the search were unreasonable, and so forbidden by the Fourth Amendment to the United States Constitution and the forepart of article 2, § 10 of the 1908 Michigan Constitution,[3] effective at the time of the crime charged herein, nonetheless the evidence seized as a result of the illegal search, a revolver, is admissible in evidence against defendant because of a proviso added to section 10 in 1935, which read thusly in 1963:

"Provided, however, That the provisions of this section shall not be construed to bar from evidence in any court of criminal jurisdiction, or in any criminal proceeding held before any magistrate or justice of the peace, any narcotic drug or drugs, any firearm, rifle, pistol, revolver, automatic pistol, machine gun, bomb, bombshell, explosive, blackjack, slungshot, billy, metallic knuckles, gas-ejecting device, or any other dangerous weapon or thing, seized by any peace officer outside the curtilage of any dwelling house in this State."

This issue does not warrant extensive discussion. In *Wolf* v. *Colorado* (1949), 338 US 25 (69 S Ct 1359, 93 L ed 1782), the United States Supreme Court held that the Fourth Amendment's guarantee against unreasonable searches and seizures was binding upon the States. In *Mapp* v. *Ohio* (1961), 367 US 643 (81 S Ct 1684, 6 L ed 2d 1081, 84 ALR2d 933), the Supreme Court held that State courts

---

[2] See *In re Winkle* (1964), 372 Mich 292, certiorari denied 379 US 645 (85 S Ct 611, 13 L ed 2d 551).
[3] See, currently, Const of 1963, art 1, § 11.

must exclude from evidence items seized in violation of the Fourth Amendment's prohibition. Article 6, § 2 of the United States Constitution provides:

"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

The Fourth Amendment does not distinguish between items which are protected from unreasonable search and seizure and those which are not, and the State of Michigan has no unilateral power to modify that amendment. Hence, the provision of the 1908 Constitution and its counterpart provision in the 1963 Constitution, which in effect permit the admission into evidence over defendant's objection of certain items which are the fruits of unreasonable search and seizure, are invalid.

*Ker* v. *California* (1963), 374 US 23 (83 S Ct 1623, 10 L ed 2d 726), emphasizes my conclusion that the standard by which the reasonableness of a search is to be determined is a Federal standard established by the Fourth Amendment. The Fourth Amendment, as it has been construed by the United States Supreme Court, recognizes no exceptions to the rule that evidence seized in an unreasonable search may not be received in a criminal proceeding, State or Federal. This is evident from an examination of the passages from *Ker* quoted by Justice KELLY, including therein, as indicated by capitalization, significant language overlooked by my Brother (pp 31, 34):

"* * * *Mapp,* however, established no assumption by this Court of supervisory authority over State courts, cf. *Cleary* v. *Bolger* (1963), 371 US 392, 401 (83 S Ct 385, 9 L ed 2d 390), and, consequently, it implied no total obliteration of State laws relating to arrests and searches in favor of Federal law. *Mapp* sounded no death knell for our federalism; Rather, it Echoed the Sentiment of *Elkins* v. *United States* [(1960), 364 US 206, 221 (80 S Ct 1437, 4 L ed 2d 1669)] That 'A Healthy Federalism Depends Upon the Avoidance of Needless Conflict Between State and Federal Courts' by Itself Urging That 'Federal-State Cooperation in the Solution of Crime Under Constitutional Standards Will Be Promoted, if Only by Recognition of Their Now Mutual Obligation to Respect *the same fundamental criteria* in Their Approaches.' " (Italics added by United States Supreme Court.) * * *

"The States are not thereby precluded from developing workable rules governing arrests, searches and seizures to meet 'the practical demands of effective criminal investigation and law enforcement' in the States, Provided That Those Rules Do Not Violate the Constitutional Proscription of Unreasonable Searches and Seizures and the Concomitant Command That Evidence So Seized Is Inadmissible Against One Who Has Standing to Complain."

## IV.

Finally, it well might be argued that the proviso of article 2, § 10 which purported to permit into evidence certain illegally seized evidence already has been effectively unanimously overruled by this Court. In *People* v. *Lee* (1963), 371 Mich 563, the Court reversed a conviction for possession of narcotics because there had been admitted into evidence against defendant narcotics which the Court

found had been illegally seized from defendant's automobile. The Court quoted only this portion of article 2, § 10 (p 568):

" 'The person, houses, papers and possessions of every person shall be secure from unreasonable searches and seizures. No warrant to search any place or to seize any person or things shall issue without describing them, nor without probable cause, supported by oath or affirmation.' "

The issue of admissibility of the narcotics in light of the section 10 proviso and the *Mapp Case* was raised at trial and in the briefs before this Court. The Court's eloquent silence on this issue and its reversal of defendant's conviction mean to me that the Court concluded that the Michigan constitutional proviso permitting introduction in evidence of the narcotics unreasonably seized could not survive the Fourth Amendment's prohibitory mandate as interpreted by the United States Supreme Court in the *Mapp Case*. If this were not so, this Court would have had to discuss the issue since it had concluded that the search was unreasonable.

The conviction should be reversed.

T. M. KAVANAGH, C. J., concurred with SOURIS, J.