PEOPLE *v.* PENNINGTON.

OPINION OF THE COURT.

1. SEARCHES AND SEIZURES—ARREST—EVIDENCE—ADMISSIBILITY.

Evidence obtained in a search without a warrant which is too remote in time or place to be incidental to a defendant's arrest is inadmissible.

2. SEARCHES AND SEIZURES—CONSTITUTIONAL LAW—CRIMINAL LAW.

Search of defendant's automobile and seizure of a loaded revolver in the locked glove compartment of the automobile was unlawful as too remote in time or place where the defendant was arrested for drunk driving, taken in custody to the police post, and interrogated there for about 15 minutes, and the arresting officer then searched the automobile without consent and without a warrant at a gas station near the police post to which it had been towed, since the reason for the arrest gave no cause for search of the automobile after defendant was already in custody (US Const, Am 4; Mich Const 1963, art 4, § 11).

3. CONSTITUTIONAL LAW—SEARCHES AND SEIZURES—CRIMINAL LAW—EVIDENCE—ADMISSIBILITY.

The Michigan constitutional provision that the section prohibiting unreasonable searches and seizures should not be construed to bar from evidence in any criminal proceedings certain articles or a dangerous weapon seized by a peace officer outside the curtilage of any dwelling house in this state cannot stand under the amendments to the United States Constitution and Federal decisions in regard thereto (US Const, art 6, § 2; US Const, Ams 4, 14; Mich Const 1963, art 1, § 11).

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 3–5] 47 Am Jur, Searches and Seizures §§ 52, 65.
  29 Am Jur 2d, Evidence §§ 412, 416.
[2] 47 Am Jur, Searches and Seizures § 52.

Concurring Opinion.

Black, J.

4. Constitutional Law—Searches and Seizures—Evidence—Admissibility.

> The provision of the Michigan Constitution allowing admission into evidence in all criminal cases certain articles seized outside the curtilage of a dwelling house in this state should be held invalid under the Federal Constitution and Federal decisional law, inasmuch as the lower Federal courts treat it as invalid in habeas corpus actions, and the United States Supreme Court will not test its validity (US Const, Ams 4, 14; Mich Const 1963, art 1, § 11).

Dissenting Opinion.

Kelly and Adams, JJ.

5. Constitutional Law—Searches and Seizures—Outside of Curtilage.

> A provision of the Michigan Constitution, allowing into evidence in all criminal cases certain articles seized outside the curtilage of a dwelling house in this state, is not contrary to the due process clause of the Constitution of the United States as construed by the Supreme Court of the United States (US Const, Ams 4, 14; Mich Const 1963, art 1, § 11).

Appeal from Court of Appeals, Division 1, Holbrook, P. J., and McGregor and Bronson, JJ., affirming Wayne, Nathan J. Kaufman, J. Submitted May 7, 1970. (Calendar No. 13, Docket No. 52,516.) Decided July 11, 1970.

17 Mich App 398, reversed.

Lawrence J. Pennington was convicted of carrying a dangerous weapon in a motor vehicle. Defendant appealed to the Court of Appeals. Affirmed. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief of Appellate Department, and *Angelo A. Pentolino,* Assistant Prosecuting Attorney, for the people.

*Sidney Fershtman* (*Stephen M. Taylor,* of counsel), for defendant.

DETHMERS, J. This is a search and seizure case involving the admissibility into evidence of the fruits thereof. Two questions are presented. First, was the search of defendant's automobile and seizure of a loaded revolver from its glove compartment violative of the Fourth Amendment to the Constitution of the United States and of Article 1, § 11, of the Michigan Constitution of 1963, guaranteeing security from unreasonable searches and seizures? Second, should that portion of Article 1, § 11, Michigan Constitution of 1963, expressly making the exclusionary rule in criminal proceedings inapplicable with respect to drugs and certain dangerous weapons unlawfully seized by a peace officer outside the curtilage of any dwelling house in this state, be held to be unconstitutional under the Fourth Amendment to the United States Constitution as applied to state action by the Fourteenth Amendment to the Federal Constitution by reason of the decision of a majority of the United States Supreme Court in *Mapp* v. *Ohio* (1961), 367 US 643 (81 S Ct 1684, 6 L Ed 2d 1081, 84 ALR2d 933)?

Pertinent facts in this case follow: A private citizen saw defendant driving an automobile on Telegraph Road in Detroit in what he described as an erratic manner. He reported it at a State Police post. An officer answered the call, followed defendant's car and observed defendant driving in

the manner as reported.  The officer ordered defendant to the curb, found him to be intoxicated, and placed him under arrest for drunk driving.  He took defendant's car keys, placed defendant in the police car and called a wrecker to tow defendant's automobile to a gas station across the street from the police post.

The officer took defendant into the post, interrogated him for approximately 15 minutes and turned him over to the custody of the desk officer. He then went to the gas station and searched defendant's car without defendant's consent and without a search warrant.  He entered the car, found the glove compartment locked, and opened it with a key taken from defendant.  In the glove compartment he found a partly filled bottle containing some whiskey and a loaded revolver.  These he took.  He then returned to the post and informed defendant that he was under arrest for carrying a concealed weapon.  Soon thereafter defendant was charged with carrying a dangerous weapon in a motor vehicle contrary to MCLA § 750.227 (Stat Ann 1962 Rev § 28.424).

On trial the people offered the bottle containing whiskey and the revolver and bullets found in it into evidence.  The trial court ruled the search and seizure unlawful and excluded the bottle of whiskey for that reason, but received the revolver and bullets because of the provision in Michigan Constitution of 1963, Article 1, § 11, forbidding the barring of the gun and bullets, for that reason, from evidence. Defendant was found guilty of carrying a dangerous weapon in a motor vehicle contrary to the said statute.

Defendant appealed to the Court of Appeals.  It affirmed for the expressed reason that this Court had not yet determined the anti-exclusionary pro-

vision of Article 1, § 11, to be unconstitutional under
the United States Constitution despite the holding
in *Mapp* v. *Ohio, supra.* The case is now here on
leave granted to defendant to appeal.

 Considering now the first question—were the
search and seizure lawful? While differences in the
facts between this case and those about to be con-
sidered are pointed out by the people, such as length
of time between the arrest and the search, we do
not deem those differences to be decisive or con-
trolling, so as to require a different result, and,
hence, think that under our decision in *People* v.
*Carr* (1963), 370 Mich 251, and the decisions of the
United States Supreme Court in *Preston* v. *United
States* (1964), 376 US 364 (84 S Ct 881, 11 L Ed
2d 777), and *Dyke* v. *Taylor Implement Manufactur-
ing Co., Inc.* (1968), 391 US 216 (88 S Ct 1472, 20
L Ed 2d 538), it must be held that the search and
seizure in the instant case were too remote in time
or place to be incidental to the arrest which was
made for driving while under the influence of in-
toxicating liquor, as to which offense the search
and seizure and fruits thereof could have had no
reasonable relationship whatsoever. The reason for
the arrest gave no cause for the search of the auto-
mobile after defendant was already in custody. We
are satisfied with the trial court's finding that the
search and seizure were unlawful. Defendant says
the trial court erred, after finding the search and
seizure unlawful, in receiving the revolver and
bullets into evidence. This he did under the anti-
exclusionary provision of Article 1, § 11, Michigan
Constitution of 1963, reading as follows:

"The provisions of this section [prohibiting un-
reasonable searches and seizures] shall not be con-
strued to bar from evidence in any criminal pro-
ceeding any narcotic drug, firearm, bomb, explosive

or any other dangerous weapon, seized by a peace officer outside the curtilage of any dwelling house in this state."

This brings us to the second question in this case: Is that provision of the Michigan Constitution unconstitutional under the federal Constitution?

Going back to the doctrine of *Weeks* v. *United States,* 232 US 383 (34 S Ct 341, 58 L Ed 652), decided in 1914, evidence secured in violation of the Fourth Amendment was inadmissible in federal courts. In *Wolf* v. *Colorado,* 338 US 25 (69 S Ct 1359, 93 L Ed 1782), decided in 1949, the United States Supreme Court held that such exclusionary rule was not, by the Fourth and Fourteenth Amendments, made applicable to a prosecution in a state court for a state crime. That holding in *Wolf* was overruled in *Mapp* v. *Ohio, supra,* decided in 1961. The court then held that evidence obtained by searches and seizures in violation of the Fourth Amendment to the Federal Constitution is inadmissible in a criminal trial in a state court by reason of the provisions of that and the Fourteenth Amendment. The court said:

"Since the Fourth Amendment's right of privacy has been declared enforceable against the states through the Due Process Clause of the Fourteenth, it is enforceable against them by the same sanction of exclusion as is used against the federal government. Were it otherwise, then just as without the *Weeks* rule the assurance against unreasonable federal searches and seizures would be 'a form of words,' valueless and undeserving of mention in a perpetual charter of inestimable human liberties, so too, without that rule the freedom from state invasions of privacy would be so ephemeral and so neatly severed from its conceptual nexus with the freedom from all brutish means of coercing evidence

as not to merit this court's high regard as a freedom 'implicit in the concept of ordered liberty.' "

In *Malloy* v. *Hogan* (1964), 378 US 1 (84 S Ct 1489, 12 L Ed 2d 653), the United States Supreme Court said:

"* * * the prohibition of unreasonable searches and seizures of the Fourth Amendment * * * are * * * to be enforced against the states under the Fourteenth Amendment according to the same standards that protect those personal rights against federal encroachment."

Article VI, clause 2, of the United States Constitution provides:

"This Constitution, and the laws of the United States which shall be made in pursuance thereof; * * * shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the constitution or laws of any state to the contrary notwithstanding."

Where a conflict between the Federal and a state constitution exists, the Supremacy Clause controls. *Reynolds* v. *Sims* (1964), 377 US 533 (84 S Ct 1362, 12 L Ed 2d 506).

It is said that what a majority of the electorate of Michigan, voting at elections in 1936, 1952, and again in 1963, have incorporated into the Constitution of Michigan governing a rule of evidence in criminal proceedings in the courts of this state ought not to be susceptible of being stricken down by five men on the Potomac, never elected to their office nor directly responsible to the people. In his opinion in *People* v. *Blessing* (1966), 378 Mich 51, 69, Justice BLACK, of this Court, wrote that the United States Supreme Court, on successive bids of *Winkle* (reference was to *Winkle* v. *Bannan* [1961], 368

US 34 [82 S Ct 146, 7 L Ed 2d 91], *Winkle* v. *Bannan*
[1965], 379 US 645 [85 S Ct 611, 13 L Ed 2d 551],
*rehearing denied* 380 US 967 [85 S Ct 1102, 14 L Ed
2d 157]) had had opportunities to strike down the
anti-exclusionary provision of the Michigan Con-
stitution, utilizing the previously decided *Mapp*
decision, but that it had not yet done so. Justice
BLACK went on to write that he had no disposition,
in that connection, to " 'attempt to outrun the Su-
preme Court of the United States.' " This writer,
in *People* v. *Simon* (1949), 324 Mich 450, wrote:

"In consideration of federal constitutional ques-
tions we are bound by what a majority of that court
[United States Supreme Court] has heretofore held,
not by speculations as to what it may do in the
future. In that connection, our views are perhaps
best expressed by the words of Mr. Justice Holmes
in *Baldwin* v. *Missouri* (1930), 281 US 586 (50 S Ct
436, 74 L Ed 1056, 72 ALR 1303), as follows:
   " 'I have not yet adequately expressed the more
than anxiety that I feel at the ever increasing scope
given to the Fourteenth Amendment in cutting down
what I believe to be the constitutional rights of the
states. As the decisions now stand, I see hardly
any limit but the sky to the invalidating of those
rights if they happen to strike a majority of this
court as for any reason undesirable. I cannot be-
lieve that the Amendment was intended to give us
*carte blanche* to embody our economic or moral
beliefs in its prohibitions.' "

He went on to say that the decision from which he
dissented would, he supposed, require many previous
cases to join *Blackstone* v. *Miller* on the *Index
Expurgatorius*. So, too, here as to *Wolf* and others.
   We share the anxiety expressed by Mr. Justice
Holmes in *Baldwin,* as above quoted. Little could
he have thought, however, that in 40 short years the
limit of the sky would have been so foreshortened

that astronauts would be setting foot on the moon and judicial activists would perhaps go to even further reaches to put under foot precedents making constitutional interpretations.  Now the matter of avoiding an attempt to anticipate United States Supreme Court decisions or to outrun it, is not as secure a ground for this Court to stand upon as it was in *Winkle* and in *Simon* in upholding the validity of Michigan procedure or rules.  Defendants failing to obtain an adjudication here of the unconstitutionality of the Michigan Constitution under the Federal Constitution follow such failures in this Court by applications for *habeas corpus* proceedings in the Federal courts.  In *Winkle* v. *Kropp* (1968), 279 F Supp 532, the United States District Court, Eastern District of Michigan, Southern Division, in a *habeas corpus* proceeding, held the Michigan constitutional provision here considered to be unconstitutional under the Fourth and Fourteenth Amendments of the United States Constitution and that the unlawfully obtained evidence therein received should have been excluded under the decision in *Mapp.** In *Lucas* v. *State of Michigan* (1970), 420 F2d 259, the United States Circuit Court of Appeals for the Sixth Circuit held the same as the District Court had held in *Winkle,* as just above stated, and further said that in view of the futility of seeking relief here, the accused need not first exhaust his state remedies before going to Federal courts.  It avails little, then, to postpone decision in this Court until the United States Supreme Court first has come to grips, as it has twice declined to do, with the Michigan constitutional provision here involved.

---

* Judgment reversed by United States Court of Appeals, Sixth Circuit, in 403 F2d 661, solely on ground that it was error to apply *Mapp* retrospectively under *Linkletter* v. *Walker* (1965), 381 US 618 (85 S Ct 1731, 14 L Ed 2d 601).

It is not hard to read the handwriting on the wall, by whatever hand it may have been written.

We hold that the revolver and bullets were obtained by an illegal search and seizure and that the court erred in receiving them into evidence because the anti-exclusionary provision of Article 1, § 11, Michigan Constitution of 1963, cannot, under Federal decisions, stand against the Fourth and Fourteenth Amendments to the United States Constitution and the decision in *Mapp*.

Reversed and remanded for new trial in accordance herewith.

T. E. Brennan, C. J., and Black, T. M. Kavanagh and T. G. Kavanagh, JJ., concurred with Dethmers, J.

Black, J. Review of the recent interposition of *Lucas* v. *Michigan* (CA 6, 1970) 420 F2d 259 leaves no doubt that the United States Supreme Court will not bother to test, as against *Mapp's* rule (367 US 643 [81 S Ct 1684, 6 L Ed 2d 1081, 84 ALR2d 933]), the validity of the concluding sentence of § 11 of Article 1 of our State Constitution. I now have no doubt that, as we attempt to apply what some of us think is a valid exercise of the powers which, by the Tenth Amendment, are supposedly reserved to the people, just so fast will the subordinate courts of the Federal system—prodded by *Mapp*—utilize *habeas corpus* to defeat that exercise.

I yield from the position taken in *People* v. *Blessing* (1966), 378 Mich 51, 68-71. In token thereof my signature will appear as an endorser of Justice Dethmers' opinion.

Kelly, J. (*dissenting*). Again I repeat what I stated in *In re Winkle* (1964), 372 Mich 292, 294-325, and in *People* v. *Blessing* (1966), 378 Mich 51,

56–67; namely, that *Mapp* v. *Ohio* (1961), 367 US 643 (81 S Ct 1684, 6 L Ed 2d 1081, 84 ALR2d 933), is not controlling, and hold that the trial court and Court of Appeals* should be affirmed.

ADAMS, J., concurred with KELLY, J.

* *People* v. *Pennington* (1969), 17 Mich App 398.   Appeal granted (1970), 383 Mich 771.