PEOPLE *v.* CHARLES D. WALKER

OPINION OF THE COURT

1. SEARCHES AND SEIZURES—PROBABLE CAUSE—EVIDENCE—QUASHING
INFORMATION—PRELIMINARY EXAMINATION—TRIAL.

Probable cause for a search and seizure must be shown at the
preliminary examination and, on defendant's motion to quash
the information for lack of probable cause for a search and
seizure, made before trial, amplifying testimony later taken at
trial which would show probable cause cannot be considered.

2. CRIMINAL LAW—PRELIMINARY EXAMINATION—PROBABLE CAUSE.

At a preliminary examination, the people are required to show
that a crime has been committed and that there is probable
cause to believe that the accused is guilty of having committed
that crime; in the absence of such a showing, the accused
cannot properly be bound over by the examining magistrate
(MCLA § 766.13).

3. SEARCHES AND SEIZURES—PROBABLE CAUSE—PLAIN VIEW DOC-
TRINE—AUTOMOBILES.

Since there was no showing at the preliminary examination of
probable cause to stop an automobile, the plain view doctrine

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 3–5] 21 Am Jur 2d, Criminal Law § 443 *et seq.*; 47 Am Jur,
Searches and Seizures § 21 *et seq.*
[2] 21 Am Jur 2d, Criminal Law, § 443 *et seq.*
[6] 47 Am Jur, Searches and Seizures § 47.
[7, 12] 47 Am Jur, Searches and Seizures § 19.
Right of search and seizure incident to lawful arrest, without a
search warrant. 32 ALR 680.
Modern status of rule as to validity of nonconsensual search and
seizure made without warrant after lawful arrest as affected by
lapse of time between, or difference in places of, arrest and
search. 19 ALR3d 727.
[8] 21 Am Jur 2d, Criminal Law § 443.
[9] 47 Am Jur, Searches and Seizures §§ 12, 16, 24.
[10] 47 Am Jur, Searches and Seizures §§ 12, 16.
[11] 47 Am Jur, Searches and Seizures § 24.

of search and seizure, even if applicable, could not come into play as, before the doctrine can be invoked, it must be shown the officer was in a place where he had a right to be.

4. SEARCHES AND SEIZURES—PROBABLE CAUSE—INFORMERS—CRIMINAL LAW—PRELIMINARY EXAMINATION.

Police officers may proceed upon the basis of information received from an informer and need not disclose the identity of the informer but, in order to establish probable cause for a search and seizure there must be a showing that the information was something more than a mere suspicion, a tip, or an anonymous phone call,' and that it came from a source upon which the officers had a right to rely and, unless such a showing is required, the preliminary examination becomes meaningless, and a defendant is forced to stand trial in violation of a proper determination from legally admissible evidence at the preliminary examination stage that a crime has been committed and that there is probable cause to believe he is guilty of it.

5. POISONS — NARCOTICS — SEARCHES AND SEIZURES — PRELIMINARY EXAMINATION — PROBABLE CAUSE — INDICTMENT AND INFORMATION — MOTION TO QUASH.

Defendant's conviction for unlawful possession or control of narcotics should be set aside where there was no showing, at the preliminary examination, of probable cause for a search and seizure and, before trial, defendant moved to quash the information for lack of probable cause in his arrest and search of his person (MCLA § 335.153).

DISSENTING OPINION

BLACK and T. E. BRENNAN, JJ.

6. CRIMINAL LAW—PROBABLE CAUSE—APPEAL AND ERROR—DEFENDANT'S BURDEN OF PERSUASION.

*Defendant bears the burden of persuasion that reversible error was committed where he asks the Michigan Supreme Court to review a presented question of probable cause in a criminal case.*

7. SEARCHES AND SEIZURES—ARREST WITHOUT WARRANT—PROBABLE CAUSE—EVIDENCE—TRIAL.

*Search and seizure was valid and the evidence was properly admitted where testimony brought forth by the people in a hearing before the trial that defendant's arrest without a warrant was based on probable cause and was lawful, as the search and seizure was made incident to that lawful arrest.*

DISSENTING OPINION
WILLIAMS, J.

8. CRIMINAL LAW—PRELIMINARY EXAMINATION.

> *The purpose of a preliminary examination is an investigation to decide whether a crime has been committed and whether there is probable cause to believe that the accused is guilty; it is not a trial.*

9. CRIMINAL LAW — NARCOTICS — INFORMANTS — PRELIMINARY EXAMINATION — CONSTITUTIONAL LAW.

> *At a preliminary examination in 1968, it was not necessary for the prosecutor to show the reliability of an informant in order to introduce the narcotics which established the commission of a crime and probable cause to believe that defendant committed it, where the prosecutor introduced the narcotics pursuant to the constitutional provision that reasonable search and seizure requirements do not bar from evidence in any criminal proceeding any narcotics seized by a peace officer outside the curtilage of any dwelling house (Const 1963, art 1, § 11).*

10. SEARCHES AND SEIZURES — CRIMINAL LAW — PRELIMINARY EXAMINATION — CONSTITUTIONAL LAW.

> *At a preliminary examination in 1968, a prosecutor should have been able to rely on the proviso of the Michigan constitution that reasonable search and seizure requirements do not bar from evidence in any criminal proceeding any narcotics seized by a peace officer outside the curtilage of any dwelling house, in light of the state of the law as it existed then.*

11. CRIMINAL LAW — INFORMANTS — WITNESSES — RES GESTAE WITNESS — PRELIMINARY EXAMINATION.

> *The prosecution need not release the name of an informant but only need prove his reliability and the informant, who had given a "tip" to the police that defendant and others were transporting narcotics, was not a res gestae witness who had to be produced at a preliminary examination.*

12. SEARCHES AND SEIZURES—APPEAL AND ERROR—CONSTITUTIONAL LAW—NARCOTICS—ARREST.

> *There was no reversible error in a case, tried prior to a Michigan Supreme Court decision which invalidated the state constitutional provision that reasonable search and seizure requirements should not bar from evidence in any criminal proceedings any narcotics seized by a peace officer outside the curtilage of any dwelling house, where the prosecution proce-*

*durally relied on that provision at the preliminary examination to introduce the narcotics which established the commission of a crime and probable cause to believe that defendant committed it and waited until trial to introduce testimony and evidence which showed that the arrest and search were valid by subsequent standards (Const 1963, art 1, § 11).*

Appeal from Court of Appeals, Division 3, Holbrook, P. J., and Bronson and E. W. Brown, JJ., affirming Kent, Roman J. Snow, J. Submitted May 6, 1971. (No. 26 April Term 1971, Docket No. 52,-988.) Decided August 27, 1971.

25 Mich App 418 reversed.

Charles Douglas Walker was convicted of unlawful possession or control of narcotics. Defendant appealed to the Court of Appeals. Affirmed. Defendant appeals. Reversed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *James K. Miller,* Prosecuting Attorney, *Donald A. Johnston III,* Chief Appellate Attorney, for the people.

*Bergstrom, Slykhouse & Shaw* (by *Robert G. Quinn, Jr.,* and *Carl J. Verspoor*), for defendant on appeal.

ADAMS, J. The basic question in this case is whether at a preliminary examination the people are required to show—*by legally admissible evidence*—that a crime has been committed and that there is probable cause to believe the accused is guilty. As will be seen, the error in this case was raised (1) at the preliminary examination, and (2) by two pretrial motions to quash. No attempt was made to correct the error until the defendant's trial had begun and he had been placed in jeopardy.

Evelle White, Charles Parrish and defendant were arrested for unlawful possession of heroin at 1:30 p.m. on June 28, 1968. White's 1966 Pontiac was stopped after leaving expressway I–96 and entering Grand Rapids. Police officers Freeman and Bender blocked defendant's car by cutting in front of it with an unmarked Corvair. They jumped out of their car with guns pointed and ordered White, Parrish and Walker to keep their hands in sight. White and Parrish were in the front seat—Walker in the back. They seized four packets of heroin from the rear floor of the car where Walker's feet had been. Search of Walker's pockets resulted in seizure of a "works kit" for heroin and an envelope containing four tabs of methadone.

On direct examination of Sergeant Freeman at the preliminary examination, the prosecutor relied on Article 1, § 11, Constitution of 1963, and made no attempt to show probable cause for the search and seizure. Cross-examination of Freeman by Calvin Danhof, attorney for White, in pertinent part was as follows:

"*Q.* Now, had you received any word, prior to your going out to the Ionia crossroads, concerning this Pontiac?

"*A.* Are you referring to a specific time?

"*Q.* I am referring to any time that day or the day before or the week before.

"*A.* Yes. We had information on this Pontiac.

"*Q.* From whom did you receive this information?

"*A.* Over the phone.

"*Q.* Who, over the phone, gave you the information?

"*A.* I don't know the name.

"*Q.* Would that be in your file?

"*A.* No, it would not.

"*Q*. Why not?

"*A*. We don't put that information in the file unless we have to.

"*Q*. You don't recall the name of this person?

"*A*. I didn't say that.

"*Q*. Do you know the name of this person?

"*A*. It's possible, yes.

"*Q*. What is the name?

"*Mr. Probert* [assistant Prosecuting Attorney]: Objection, your Honor. This witness is being asked this question again. It has no effect to the offense charged and; number two, I again cite Article 1, § 11 of the Michigan Constitution which states that guns and narcotics are not subject to the laws of search and seizure, and it has no relevancy nor material at this time.

"*Mr. Danhoff* [*sic*]: In support of the line of questioning, your Honor, I would submit that the nature of the information received by the police force and the identity of the person or persons who gave this information is crucial on the issue of the reasonableness of the arrest and resulting search and seizure in this case.

\* \* \*

"*The Court*: \* \* \* Getting back to the matter of the question at hand as to—let me ask the Sergeant this question. I mean, did you receive—did you talk to the party who provided the information for this particular arrest and search?

"*A*. Well, to answer it that way, the information on this particular car and the driver was not one piece of information. We had received information, and the Police Department had received information, and myself, on Mr. White dating back some time.

"*The Court*: Well, at this time I will overrule the objection and—excuse me. You made the objection, Mr. Probert. I will sustain the objection to requiring this officer to name this source of information at this time. Go ahead, Mr. Danhof.

"*Mr. Danhoff* [*sic*]: With exception, your Honor, to the identity of this person, I would like to—with

permission of the court, pursue this line of questioning a little bit further so we can learn the nature and extent of the information that the police had received prior to this arrest.

"*Mr. Probert:* Your Honor, I'm going to object. I think Mr. Danhof will attempt to indirectly, and perhaps by eliciting certain questions and obtaining certain information from these questions, although not directly as to who the source of information was, perhaps by process of elimination obtain the same information.

"*The Court:* Well, I'll permit some limited questioning along these lines and still maintain the ruling that the source of the information as to name and address and that sort of thing is not necessarily to be divulged here, but more or less to determine the extent of the information which prompted the arrest and search. So go ahead, Mr. Danhof."

In spite of the judge's ruling, Mr. Danhof did not pursue this line of questioning. There was no other testimony, either by Sergeant Freeman or by any other witness at the preliminary examination, to establish probable cause.

Before trial, defendant filed a motion to quash the information for lack of probable cause in the arrest and search of Walker. The motion was denied by Judge Searl largely on the ground that the Michigan Constitution, Article 1, § 11, allowed searches without probable cause for narcotics "outside the curtilage of any dwelling house in this State."

At a pretrial conference before Judge Roman J. Snow, defendant's attorney again moved to quash the information "on the grounds the arrest was improper and without good and reasonable cause." No testimony was introduced other than that at the preliminary examination. Judge Snow relied on the validity of Article 1, § 11, of the 1963 Constitution and also found probable cause for search under the

"plain view doctrine" based on the testimony of Sergeant Freeman that he saw the four packets (later found to contain heroin) on the floor of the car "as he [Walker] was just getting out of the car."

At trial on March 4, 1969, after the jury was sworn and after the voir dire, the prosecutor conducted an examination of Sergeant Freeman outside the presence of the jury. Defendant's attorney objected on the ground that probable cause must be shown at the preliminary examination and cannot be shown at trial. Sergeant Freeman's testimony at the trial clearly established probable cause.

Walker was convicted of unlawful possession or control of narcotics (MCLA § 335.153 [Stat Ann 1957 Rev § 18.1123]) and was sentenced to five to ten years. His conviction was affirmed by the Court of Appeals. (25 Mich App 418.) We granted leave. (384 Mich 761.)

Relying on *People* v. *Zeigler* (1960), 358 Mich 355, defendant argues that probable cause must be shown at the preliminary examination. In *Zeigler*, this Court stated (pp 359, 360):

"What about probable cause in the case at bar? The only showing before the circuit court on the motion to suppress consisted of the testimony presented at the preliminary examination. Amplifying testimony later taken at trial cannot be considered. We are limited to that taken at the examination. *People* v. *Miller, supra.* [(1928) 245 Mich 115] With respect to all such testimony concerning complaints or tips about defendant received by the officers before the arrest, it must be said, as in *Miller*, that 'the officer did not give the source of his information nor identify his informant.' In fact, when defendant's counsel questioned the officer, at the preliminary examination, as to the source of his information, he replied that it was confidential, and the examining magistrate sustained the prosecuting at-

torney's objections to defense counsel's further questioning on the subject. As said in *Miller,* then, the anonymous information did not meet the test. There was no other information, free from the infirmity of being anonymous, disclosed to the court by the officer on which a claim of probable cause for the search could be planted. Probable cause was not established."

In *People* v. *Kaigler* (1962), 368 Mich 281, Justice T. M. KAVANAGH, who was joined in his opinion by three other Justices, wrote (p 299):

"Both Justice KELLY and Justice SOURIS have ignored the long line of Michigan cases which hold that testimony taken at the trial cannot be considered as bearing on the question of the validity of the search and seizure; but only the testimony at the examination and at the hearing on the motion to suppress before trial can be considered in determining whether the search and seizure were valid. In total disregard of this long line of decisions, they have proceeded to give consideration to trial testimony without indicating whether they would overrule this well-settled law of this State. With this method of disposition, I cannot agree."

See, also, *People* v. *Williams* (1962), 368 Mich 494.

At the preliminary examination, the people are required to show that a crime has been committed and that there is probable cause to believe that the accused is guilty of having committed that crime. In the absence of such a showing, the accused cannot properly be bound over by the examining magistrate. (MCLA § 766.13 [Stat Ann 1954 Rev § 28.931]); *People* v. *Dellabonda* (1933), 265 Mich 486; *People* v. *Karcher* (1948), 322 Mich 158; *People* v. *Miklovich* (1965), 375 Mich 536; *People* v. *Kennedy* (1971), 384 Mich 339.

In this case, the prosecutor and the judges relied on Article 1, § 11, Constitution of 1963, which was

declared unconstitutional in *People* v. *Pennington* (1970), 383 Mich 611.

The validity of the proviso of art 1, § 11, was in question following *Mapp* v. *Ohio* (1961), 367 US 643 (81 S Ct 1684; 6 L Ed 2d 1081, 84 ALR2d 933). The conduct of the police officers was directly challenged at the preliminary examination and by two motions to quash. Rather than establishing the legality of their conduct, the prosecutor, in the face of these challenges, elected to stand on the validity of art 1, § 11, and to shield from the scrutiny of the magistrate the basis for the actions taken by the officers against the defendant. To uphold such procedure puts an end to a meaningful judicial examination at the preliminary hearing. The issue was clearly stated in the majority opinion in *Beck* v. *Ohio* (1964), 379 US 89, 97 (85 S Ct 223, 13 L Ed 2d 142), in which case Justice Stewart wrote as follows:

"It is possible that an informer did in fact relate information to the police officer in this case which constituted probable cause for the petitioner's arrest. *But when the constitutional validity of that arrest was challenged, it was incumbent upon the prosecution to show with considerably more specificity than was shown in this case what the informer actually said, and why the officer thought the information was credible.* We may assume that the officers acted in good faith in arresting the petitioner. But 'good faith on the part of the arresting officers is not enough.' *Henry* v. *United States* [1959], 361 US 98, 102 [80 S Ct 168, 171; 4 L Ed 2d 134, 138]. If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be 'secure in their persons, houses, papers, and effects,' only in the discretion of the police." (Emphasis added.)

In the light of what was presented to the examining magistrate, it was clearly error to allow the

narcotics into evidence to determine probable cause. Since probable cause for the arrest and search was not properly established at the preliminary examination, it begs the question to say that probable cause existed to believe that a crime had been committed. There can be no judicial determination of probable cause unless it is made at the proper stage of the proceedings.

Since there was no showing at the preliminary hearing of probable cause to stop the Pontiac car, the plain view doctrine, even if applicable, could not come into play. Before the doctrine can be invoked, it must be shown the officer was in a place where he had a right to be. See *People* v. *Tisi* (1970), 384 Mich 214.

From both the Michigan and Federal cases, it is clear that while police officers may proceed upon the basis of information received from an informer and need not disclose the identity of the informer, in order to establish probable cause there must be a showing that the information was something more than a mere suspicion, a tip, or anonymous telephone call, and that it came from a source upon which the officers had a right to rely.[1] This is the showing which should have been made at the preliminary examination in this case, but was not. Unless we require such a showing, the preliminary examination becomes meaningless, and a defendant is forced to stand trial in violation of a proper determination *from legally admissible evidence* at the preliminary examination stage that a crime has been committed

---

[1] For Federal cases involving the use of informers to establish probable cause, see: *Beck* v. *Ohio, supra; Cochran* v. *United States* (CA 8, 1961), 291 F2d 633; *Price* v. *United States* (CA 10, 1959), 262 F2d 684; *Aquilar* v. *Texas* (1964), 378 US 108 (84 S Ct 1509, 12 L Ed 2d 723); *Spinelli* v. *United States* (1969), 393 US 410 (89 S Ct 584, 21 L Ed 2d 637); *Draper* v. *United States* (1959), 358 US 307 (79 S Ct 329, 3 L Ed 2d 327); and *McCray* v. *Illinois* (1967), 386 US 300 (87 S Ct 1056, 18 L Ed 2d 62).

and that there is probable cause to believe he is guilty of it.

There was no showing of probable cause at the preliminary examination in this case. The Court of Appeals and the trial court are reversed and defendant's conviction is set aside.

T. M. Kavanagh, C. J., and T. G. Kavanagh and Swainson, JJ., concurred with Adams, J.

Black, J. (*dissenting*). To reach its conclusion that still another reversal of still another conviction must be ordered, our majority strains aport too much at the record of proceedings in circuit and presents what to me is an overstatement of "favorable view", favorable to the *defendant* that is, much as is properly accorded the *plaintiff* in a negligence action when the sufficiency of his evidence is tested by a peremptory motion. Things are the other way around when this Court is asked by a convict to review a presented question of probable cause. In such instance he bears the burden of persuasion that reversible error was committed.

I stand by the somewhat more thorough review of the proceedings in circuit which Division 3 has recorded (*People* v. *Charles D. Walker* [1970], 25 Mich App 418–428) and point particularly to the record made before the trial judge on March 3 and again on March 4, 1969—*before the trial actually commenced*. Our majority concedes (*ante* at p 572) that at the March 4 stage at least the testimony "clearly established probable cause."

Division 3 concluded, and I concur (25 Mich App at 431):

"We rule in this case that the people brought forth testimony in a hearing before the trial that the arrest of the defendant without a warrant was based

on probable cause and was lawful and that the search and seizure having been made incident to that lawful arrest were valid and the evidence properly admitted."

Supplement (August 21):

The foregoing declaration of viewpoint was delivered to the other Justices July 6, 1971. Since then Justice Williams has submitted to us a separate opinion standing for affirmance of the judgment of the Court of Appeals, and our original apparent majority has become a minority. My vote to affirm stands, as before.

T. E. Brennan, J., concurred with Black, J.

Williams, J. (*dissenting*). At issue in this case is a matter of procedure. The question is whether it was reversible error that the trial court refused a motion to quash and a motion to suppress evidence on the grounds of failure to show at the preliminary examination probable cause for either search and seizure or arrest. Actually, as shown at the trial, there was probable cause for both the arrest and the search and seizure.

I

Acting upon an informant's tip that three men were transporting narcotics from Detroit to Grand Rapids in a certain make and model car, the Grand Rapids police established a surveillance point in a rest stop along Interstate 96. Sighting the car described by the informant, the police followed it to a point where it exited and then forced it to the curb by swerving in front of the car. After ordering the occupants out of the car under gunpoint, the police searched the car finding four packets of heroin and

a search of defendant's person produced four methadone pills and a kit for administering injections.

At the preliminary examination, the defendant moved to quash the information for lack of probable cause to make the arrest and also moved to suppress the evidence of the search. The prosecution sought to introduce the narcotics into evidence on the basis of the proviso of Article 1, § 11 of the Michigan constitution[1] which states that Article 1, § 11's reasonable search requirements do not bar from evidence in any criminal proceeding any narcotics seized by a police officer outside the curtilage of any dwelling house. The judge ruled in favor of the prosecution and allowed the narcotics into evidence. This evidence established that a crime had been committed and probable cause for believing that defendant committed it.

Defendant renewed his motions at trial. A hearing was held at trial outside the presence of the jury after *voir dire* but prior to the submission of any proofs, on defendant's renewed motions to suppress the .evidence of the search and to quash the information for lack of probable cause to make the arrest. At this hearing the prosecutor brought forth testimonial evidence which clearly established the reliability of the informant's tip with specificity and particularity. Officer Freeman testified that the informant not only described the make, body style and color of the vehicle to be used to transport the "drug heroin," but also described some damage to the front

---

[1] Article 1, § 11 of the 1963 Michigan constitution reads:

"The person, houses, papers and possessions of every person shall be secure from unreasonable searches and seizures. No warrant to search any place or to seize any person or things shall issue without describing them, nor without probable cause, supported by oath or affirmation. The provisions of this section shall not be construed to bar from evidence in any criminal proceeding any narcotic drug, firearm, bomb, explosive or any other dangerous weapon, seized by a peace officer outside the curtilage of any dwelling house in this state."

end of the car and gave the license number, that the informant identified the three men eventually arrested, stated the purpose of their trip and gave approximate departure and arrival times, that he worked with the informant for at least five years and had utilized his information to effect several arrests and convictions for narcotic offenses and armed robberies and that he had personally arrested the defendant some six years previous for trafficking in heroin and was familiar with his association with the other two men. The trial judge denied defendant's motions to suppress the evidence of the search and to quash the information which defendant renewed a second time at the close of the proofs. Defendant was convicted of unlawful possession of narcotics. From a denial of these motions and the subsequent conviction defendant appealed.

The Court of Appeals affirmed the conviction ruling that the arresting officers had probable cause to arrest the defendant without a warrant and that the search was incident to a lawful arrest. The Court pointed out that the information provided the arresting officers by a reliable informant gave them reason to believe that the defendant had committed and was committing a felony offense.

Relying on the rule stated in *People* v. *Miller* (1928), 245 Mich 115, 118 and reaffirmed in *People* v. *Zeigler* (1960), 358 Mich 355 and *People* v. *Kaigler* (1962), 368 Mich 281, the defendant contended on appeal that the reliability of the informant must be proven with evidence introduced at the preliminary examination and that it is improper to use amplifying testimony later taken at trial to show that the informant was reliable so that the arresting officers had reasonable grounds to make the arrest and

the search incident to the arrest. Defendant points out that at the preliminary examination the only evidence about the reliability of the informant was a reference to the fact that the arresting officers had received an anonymous tip. *Miller, supra,* held that anonymous information does not meet the test of giving an arresting officer reasonable grounds for making a warrantless search.

The issues on appeal are narrow ones. No one questions that due to the informant's tip the police officers had reasonable grounds to arrest defendant without a warrant.[2] For the same grounds no one doubts the constitutional validity of the search. What is in question is the procedure the prosecutor used at the preliminary examination. First, how does the *Miller-Zeigler-Kaigler* rule requiring the prosecutor to introduce evidence at the preliminary examination showing the reliability of the informant apply in this case? Second, could the prosecutor rely on Article 1, § 11's proviso to introduce into evidence the narcotics seized from an automobile in 1968 when *People* v. *Pennington* (1970), 383 Mich 611, invalidated that proviso in 1970? Third, must the prosecutor show the validity of the arrest at preliminary examination exclusive of testimony produced at the subsequent trial?

---

[2] It is a well established rule that if an officer believes, and has good reason to believe, that a person has committed a felony or is committing a felony that he may arrest him without a warrant. *People* v. *Licavoli* (1928), 245 Mich 202; *People* v. *Orlando* (1943), 305 Mich 686; *People* v. *Bommarito* (1944), 309 Mich 139 and *People* v. *Ormsby* (1945), 310 Mich 291. The United States Supreme Court stated the rule for an arrest without a warrant to be whether the facts and circumstances within the knowledge of the arresting officers and of which they had reasonable trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed. *Carroll* v. *United States* (1924), 267 US 132, 162 (69 L Ed 543, 555; 45 S Ct 280, 288.

## II

The purpose of a preliminary examination is set forth in *People* v. *Podolski* (1952), 332 Mich 508, 518 as follows:

"The examination cannot be said to be a trial, but it is an investigation to decide whether a crime has been committed and whether there is probable cause to believe the accused is guilty. *McCurdy* v. *New York Life Ins. Co.* [1897], 115 Mich 20, 22."

In the instant case, the narcotics introduced into evidence under the proviso of Article 1, § 11 together with the testimony describing the search indicated the existence of a crime and defendant's probable connection with it. In *Miller, Zeigler* and *Kaigler* the proviso of Article 1, § 11 was not in issue. Those cases dealt with the question of whether the search was reasonable so that the evidence obtained by the search could be introduced into evidence. In none was the question of the validity of arrest or the necessity of showing probable cause therefor at the preliminary examination in issue. The reasonableness of the search had to be determined from the facts presented at the preliminary examination and could not include amplifying testimony later given at trial. These cases do not apply to the instant case where the proviso of Article 1, § 11, if then valid, eliminated the need to show the reasonableness of the search. Thus, it was not necessary for the prosecutor to show the reliability of the informant at the preliminary examination to introduce the narcotics which established the commission of a crime and probable cause to believe defendant committed it.

## III

The validity of the proviso of Article 1, § 11 was in question following the decision of the United

States Supreme Court in *Mapp* v. *Ohio* (1961), 367 US 643 (81 S Ct 1684, 6 L Ed 2d 1081, 84 ALR2d 933) in which the Fourth Amendment to the United States Constitution was made applicable to the states by incorporating it into the due process clause of the Fourteenth Amendment to the United States Constitution. However, the proviso was not declared invalid in Michigan until our Court decided *Pennington* (383 Mich 611) in 1970. At the time of the instant case in 1968 the Court of Appeals had directly passed on the validity of the proviso in three cases ruling that it was applicable and valid until declared invalid by our Court. *People* v. *Monroe* (1966), 3 Mich App 165; *People* v. *Vanlandingham* (1967), 6 Mich App 128 and *People* v. *Dillion* (1967), 7 Mich App 256. Our Court twice had the opportunity to declare the proviso invalid but in both cases avoided the issue and decided the cases on other grounds. *In re Winkle* (1964), 372 Mich 292; *People* v. *Blessing* (1966), 378 Mich 51. Thus, in the light of the state of the law as it existed in 1968, a prosecutor should have been able to rely on the proviso of Article 1, § 11. To find otherwise would require of a prosecutor that he possess the gift of prophecy.

Despite this history we might be persuaded to apply *Pennington* retroactively to *Mapp* in those situations where the defendant's Fourth Amendment rights were violated in some manner. But that situation did not occur in this case. Here, the arrest and the search incident to the arrest were valid by post-*Pennington* standards. The policy behind *Mapp* was that by excluding the evidence obtained in an unreasonable search the incentive for violating the reasonable search requirements of the Fourth Amendment would be eliminated. This policy has no application to the instant case. The defendant's rights were in no way jeopardized by the search and

the police acted in a lawful manner. Nor can we see how the defendant was harmed in any other way. Possibly, defendant could claim that he was denied the opportunity of being confronted with the name of the informant and the particulars of the information at the preliminary examination. But there is no reason to believe that such information in advance of trial would have helped defendant any more than it did at trial which resulted in his conviction. Moreover, the prosecution need not release the name of the informant but only need prove the reliability of the informant.[3] Nor was the informant a *res gestae* witness who had to be produced at the preliminary examination.

## IV

The question remains whether it was necessary to show probable cause for the arrest at the preliminary examination. As indicated above, neither *Miller, Zeigler* nor *Kaigler* are in point, because there the question related to the unlawful search not to an arrest. Certainly, where the arrest actually was valid and where the evidence showed a crime and probable cause, there is no reversible error in the procedure. See also *Frisbie* v. *Collins* (1952), 342 US 519 (72 S Ct 509, 96 L Ed 541), which upheld the trial court's ruling "that the state court had power to try respondent 'regardless of how presence was procured.'" (P 520.)

## V

In conclusion we affirm the Court of Appeals. We find that there is no reversible error in a pre-*Pennington* case where the prosecution procedurally re-

---

[3] *Draper* v. *United States* (1959), 358 US 307 (79 S Ct 329, 3 L Ed 2d 327); *Aquilar* v. *Texas* (1964), 378 US 108 (84 S Ct 1509, 12 L Ed 2d 723) and *McCray* v. *Illinois* (1967), 386 US 300 (87 S Ct 1056, 18 L Ed 2d 62).

lied on the proviso of Article 1, § 11 at the preliminary examination to introduce the narcotics which established the commission of a crime and probable cause to believe defendant committed it and waited until trial to introduce testimonial evidence which showed that the arrest and search were valid by post-*Pennington* standards.